UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KARL T., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02256-TAB-JRS |
| | ) | |
| FRANK BISIGNANO Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

## I. Introduction

Plaintiff Karl T. challenges the Social Security Administration's denial of his application for disability insurance benefits. Plaintiff argues that the ALJ erred in finding an opinion from one of Plaintiff's medical providers unpersuasive without a logical and accurate bridge from the evidence to this conclusion; failed to explain if or how he accounted for Plaintiff's problems with his hands and his complex regional pain syndrome in relation to his residual functional capacity assessment; and relied on meaningless boilerplate discussion in assessing Plaintiff's subjective allegations. The Court acknowledges the ALJ could have more thoroughly explained his reasoning and should have addressed Plaintiff's activities of daily living when assessing his subjective symptoms. However, the Court finds no reversible error. The ALJ 's decision reflects proper consideration of and a logical bridge between the evidence and his conclusions and is supported by substantial evidence. Therefore, Plaintiff's request for remand is denied, and the decision of the Commissioner is affirmed. [Filing No. 16.]

## II. Background

On November 30, 2022, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning November 4, 2022. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 4, 2022, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: residuals of a traumatic brain injury with subarachnoid hemorrhage; cervical and lumbar degenerative disc disease; bilateral shoulder degenerative joint disease, status-post right shoulder rotator cuff repair; and complex regional pain syndrome in the right lower extremity. [Filing No. 12-2, at ECF p. 20.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to work despite his limitations. The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> [Plaintiff] can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he cannot operate foot controls with his right lower extremity, he can occasionally reach overhead and can frequently reach in all other directions with his bilateral upper extremities, he must avoid concentrated exposure to wetness, and he must avoid all exposure to unprotected heights and hazardous machinery.

[Filing No. 12-2, at ECF p. 21.]

At step four, the ALJ concluded that Plaintiff could not perform any past relevant work. Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including label marker, hand packager, and garment bagger. [Filing No. 12-2, at ECF p. 27.] Accordingly, the ALJ concluded that Plaintiff was not disabled.

## III. Discussion

Plaintiff argues that the ALJ failed to articulate how he considered evidence that supported the medical opinion of Plaintiff's treating physician and failed to sufficiently support his RFC and subjective symptom assessments. The Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, 587 U.S. 97, 99, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)). "The threshold for substantial evidence is not high." *Thorpe v. Bisignano*, 148 F. 4th 432, 437 (7th Cir. 2025) (internal citation and quotation marks omitted). In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

**A. Evaluation of Medical Opinion of Nurse Practitioner Lisa Swingley**

Plaintiff claims the ALJ erred in evaluating the persuasiveness of treating nurse practitioner Lisa Swingley's medical opinion. An ALJ evaluates the persuasiveness of medical opinion evidence by determining how evidence supports a medical opinion and is consistent with medical evidence. 20 C.F.R. § 404.1520c(b)(2). Swingley opined that Plaintiff could frequently lift and carry up to 10 pounds; sit and stand for a total of one-hour in an eight-hour workday, but walk for only a total of 15-20 minutes; and occasionally reach, handle, finger, and feel with his upper extremities. She also opined that Plaintiff needed the following accommodations: to alternate between sitting, standing, and walking at will; to elevate the lower extremities to 30 to 40 degrees when seated; to be off task in excess of 25 percent of the workday; and to be absent from work more than four days a month. [Filing No. 12-9, at ECF p. 350-53.] In finding Swingley's opinion unpersuasive, the ALJ stated Swingley's opinion was partially supported by evidence of right arm weakness, right foot drop, and balance and coordination issues, but "wholly inconsistent" with Plaintiff's normal consultative examination. [Filing No. 12-2, at ECF p. 25.]

Plaintiff argues the ALJ cherry-picked evidence in finding Swingley's opinion unpersuasive. Plaintiff was hospitalized from a motorcycle crash in November 2022. Following that collision, Plaintiff had immediate injuries, followed by months-long recovery and some residual issues. Plaintiff suffered from numerous defects in the cervical and lumbar spine; tenderness and a broken finger on his left hand; and complex regional pain syndrome in the right lower extremity that was characterized by pain, allodynia, burning, and paresthesia. [Filing No. 12-8, at ECF p. 2, 7, 348; Filing No. 12-9, at ECF p. 40, 280.] Plaintiff argues that the ALJ discussed none of these findings when evaluating Swingley's opinion.

Merely summarizing evidence does not substitute for meaningful analysis of the evidence. *See, e.g., John P. v. Bisignano*, No. 1:24-CV-00894-KMB-SEB, 2025 WL 1947603, at *3 (S.D. Ind. July 16, 2025) ("[T]he ALJ neither reaches a conclusion regarding the credibility of John's testimony nor explain how she considered or dismissed John's reported need for elevation in crafting the RFC. Without accompanying analysis or explanation, no 'logical bridge' has been built, creating reversible error."). However, "an ALJ's decision does not require 'tidy packaging' and should be 'read as a whole.'". *See Rhynettia B. v. Kijakazi*, No. 1:22-cv-504-MG-JRS, 2023 WL 2582049, at *6 (S.D. Ind. Mar. 21, 2023) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004)).

A review of the ALJ's entire decision demonstrates that the ALJ both referenced and reasonably evaluated Plaintiff's extensive medical history before addressing the persuasiveness of Swingley's opinion. The ALJ considered the record evidence at length. The ALJ summarized Plaintiff's November 2022 hospitalization after the motorcycle collision, noting his injuries at the time of the crash but also that symptoms had improved significantly by the time he was discharged from the hospital. For instance, the ALJ noted that at discharge, symptoms of Plaintiff's subarachnoid hemorrhage were resolved, and his traumatic brain injury symptoms were resolving. [Filing No. 12-2, at ECF p. 23.]

While Plaintiff cites evidence he believes was reasonably consistent with the limitations Swingley opined, the ALJ's decision reflects consideration of that evidence. The ALJ reasonably found Swingley's opinion to be only partially supported by evidence cited of right arm weakness, right foot drop, and balance and coordination issues. [Filing No. 12-2, at ECF p. 25.] Beyond that, however, Swingley supplied little evidence, despite opining severe restrictions. The ALJ also found Swingley's severe restrictions to be inconsistent with the almost entirely normal

results of Plaintiff's consultative examination with Dr. Xavier Laurente. Plaintiff takes issue with the fact that Dr. Laurente performed only a one-time examination of Plaintiff. However, Swingley's treatment of Plaintiff was not extensive. She saw him for a car accident follow up appointment, a six month follow up appointment, medication checks and refills, a pre-operation physical, and a mole on his face. Moreover, Plaintiff does not point to any treatment notes or examination results from any of those visits with Swingley that supported Swingley's overly restrictive opinion which the ALJ allegedly ignored. In comparison, Dr. Laurente's examination report[1] addressed several relevant examination findings.

Plaintiff's argument amounts to an improper request for the Court to reweigh the evidence. *See, e.g., Burmester*, 920 F.3d at 510. For these reasons, the ALJ did not err in evaluating the persuasiveness of Swingley's opinion.

**B. The ALJ's RFC Assessment and Manipulative Abilities**

Next, Plaintiff argues the ALJ erred in failing to construct a logical bridge between the evidence and his assessment of Plaintiff's manipulative abilities. [Filing No. 16, at ECF p. 11.] The ALJ found Plaintiff could perform light work, with the additional restriction that he could occasionally reach overhead and frequently reach in other directions with both arms. [Filing No. 12-2, at ECF p. 21.] Plaintiff claims the ALJ failed to identify evidence that supported the limitations in reaching and did not articulate how he concluded Plaintiff's impairments limited his ability to reach, but not his ability to handle or finger.

[1] The Commissioner characterizes Dr. Laurente's examination report as "lengthy." [Filing No. 17, at ECF p. 7.] The Court agrees with Plaintiff's critique of this characterization. The ALJ did not discuss the length of Dr. Laurente's opinion. Thus, this is impermissible *post-hoc* rationalization. Nevertheless, the Court finds the ALJ did not err in his evaluation of Swingley's opinion for the other reasons noted by the Commissioner, as addressed above.

Plaintiff points out that the ALJ had available medical opinions submitted from Swingley and the non-examining medical consultants. Swingley opined Plaintiff could occasionally reach, handle, finger, and feel. [Filing No. 12-9, at ECF p. 352.] As noted above, the ALJ found Swingley's medical opinion unpersuasive. The state agency consultants reviewed Plaintiff's medical file and concluded that he had no manipulative restrictions. The ALJ found these opinions were partially persuasive, but that evidence supported additional limitations that neither consultant identified. [Filing No. 12-2, at ECF p. 24-25.] The ALJ also discounted Plaintiff's subjective allegations, finding them not entirely consistent with the evidence. Thus, Plaintiff argues that the ALJ was left with only objective medical findings, which he did not have proper medical education, training, or experience to independently evaluate.

However, it is well settled that "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). The ALJ did not err in not adopting fully any particular medical opinion. He supported his RFC finding with citations to substantial evidence in the record. *See, e.g., Kelli H. v. Saul*, No. 1:19-cv-3125-TAB-JMS, 2020 WL 1501877, at *3 (S.D. Ind. Mar. 30, 2020) ("While medical sources are to be considered, the ALJ has the final responsibility for determining a claimant's RFC. In order to assess the claimant's RFC, the ALJ must weigh the evidence and consider conflicting medical opinions in light of all other evidence in the record." (Internal citations omitted)).

Plaintiff specifically argues that the ALJ did not articulate how the evidence supported his determination that Plaintiff could occasionally reach overhead, but frequently reach in other directions, and had unlimited ability to handle and finger. In response, the Commissioner claims that the ALJ imposed this limit expressly to address Plaintiff's shoulder difficulties, so "it is self-

evident why reaching overhead would be more problematic than reaching forward." [Filing No. 17, at ECF p. 9.] The Commissioner cites no ruling, regulation, or case law that permits an ALJ to merely rely on the "self-evident" nature of a claimant's impairments, treatment records, medical opinions, or other evidence in the place of discussion. So while the Commissioner's argument is flawed, the ALJ's decision as a whole reflects the minimal articulation required. The ALJ explained more than once in his decision that Plaintiff's shoulder impairments would be expected to limit his reaching capabilities.

As for the lack of additional manipulative limitations, the ALJ acknowledged that during the consultative examination with Dr. Laurente, Plaintiff was unable to grip or grasp objects with his right hand, but he also had no difficulties picking up coins, buttoning a shirt, zipping a zipper, tying shoes, opening a jar, picking up keys, writing with a pencil, or shaking hands. In addition, Dr. Laurente found Plaintiff had full grip strength in both hands, as well as normal ability to pinch, grasp, and manipulate small and large objects, make a fist, and oppose his fingers. [Filing No. 12-2, at ECF p. 24 (citing Filing No. 12-8, at ECF p. 330-341.] This was consistent with the opinions of the state agency consultants, who assessed no handling limitations.

The ALJ's decision reflects proper consideration of the supportability and consistency of the medical opinions before the ALJ arrived at an RFC finding supported by the full record. Plaintiff fails to show that the record compelled greater functional limitations than those assessed by the ALJ. Plaintiff speaks in generalities about other limitations he wishes the ALJ had included, but he does not suggest any greater or additional limitations supported by the record that the ALJ did not address. *See, e.g., Dawn C. v. Kijakazi*, No. 1:22-cv-431-TWP-TAB, 2023 WL 2957401, at *5 (S.D. Ind. Jan. 5, 2023), *report and recommendation adopted sub nom., Dawn M. C. v. Kijakazi*, No. 1:22-cv-431-TWP-TAB, 2023 WL 2595545 (S.D. Ind. Mar. 22,

2023) ("Plaintiff still must identify an error that caused harm and explain how that harm justifies remand."). For instance, Plaintiff takes issue with the ALJ's lack of finding additional limitations for his complex regional pain syndrome. Plaintiff cites the typical symptoms of this impairment, but he does not point to any evidence of functional work limitations omitted from the RFC that *he* specifically had in relation to this—or any other—impairment.

In sum, Plaintiff does not point to specific limitations supported by the record that the ALJ omitted. Thus, any error the ALJ may have committed in his articulation is harmless. *See, e.g., Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (explaining harmless-error review means no remand of a case to the ALJ for further explanation if the court can predict with great confidence result on remand would be the same).

**C. Subjective Symptom Assessment**

Finally, Plaintiff claims the ALJ erred in failing to substantively discuss Plaintiff's subjective allegations, relying instead on "meaningless boilerplate phraseology" that failed to reveal what evidence—if any—the ALJ considered before dismissing Plaintiff's subjective allegations. [Filing No. 16, at ECF p. 17.] The regulations describe a two step-process for evaluating a plaintiff's subjective symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain"; and second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding

with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (internal citations omitted). "[The Court] will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (internal citation and quotation marks omitted).

The ALJ summarized Plaintiff's hearing testimony about being unable to work due to ongoing pain following his November 2022 motorcycle collision, use of a cane to climb stairs, ongoing right shoulder pain and limited range of motion, difficulty standing for prolonged periods, and difficulty holding objects. The ALJ also summarized the subjective report of Plaintiff's friend, Caroline Cox. The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Filing No. 12-2, at ECF p. 22.] The ALJ acknowledged that once he determined that objective medical evidence, alone, failed to substantiate Plaintiff's allegations of disabling pain and symptoms, he was required to evaluate Plaintiff's allegations by analyzing the factors enumerated in SSR 16-3p.

However, despite acknowledging the requirements of SSR 16-3p, the ALJ did not fully conduct the requisite analysis. The ALJ proceeded to summarize medical evidence, assess the persuasiveness of medical opinion evidence, and concluded Plaintiff was not disabled. While an ALJ is required to consider objective medical evidence when he evaluates a claimant's subjective allegations, the ALJ errs if he rejects a claimant's subjective allegations, such as pain, based only on a lack of corroborating objective medical evidence. *See, e.g., Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018). In this case, the ALJ failed to articulate if or how he considered Plaintiff's

limited activities of daily living before determining that Plaintiff's subjective allegations were not entirely consistent with the evidence. Indeed, the ALJ discussed none of the limitations Plaintiff encountered when he attempted to perform activities of daily living—such as his testimony that he required assistance from his mother and sister to shop for groceries; could not reach overhead to clean; performed most chores with his left hand, despite being right hand dominant, due to pain and restricted range of motion; and required reminders from family to shower, brush his teeth, and take medication.

The Commissioner seemingly accepts that the ALJ erroneously failed to consider Plaintiff's activities of daily living. However, rather than attempting to argue that the ALJ did in fact properly analyze those activities, the Commissioner argues that any such error was harmless. [Filing No. 17, at ECF p. 15.] Plaintiff acknowledges in his reply brief that courts may excuse an ALJ's failure to explicitly discuss a claimant's activities of daily living where an ALJ has provided sufficient analysis of other factors enumerated in SSR 16-3p, but Plaintiff argues that is not the case here because the ALJ only discussed the objective findings.

The ALJ should have addressed Plaintiff's activities of daily living. Despite this shortcoming, the ALJ thoroughly addressed more than just objective findings. The ALJ found some consistency between Plaintiff's testimony and his post-collision hospitalization records but then addressed his recovery progress. He discussed Plaintiff's complaints of pain at physical therapy, as well as his surgical history. The ALJ also addressed Plaintiff's treatment, including benefits while taking certain medicines, such as Lyrica, and physical therapy, while also acknowledging that Plaintiff continued to report pain or difficulties with activities. He emphasized the consultative examination findings, as noted above, and he also found partially persuasive the medical opinions of the state agency consultants. While the ALJ found the

opinion of Plaintiff's treating provider Swingley unpersuasive, he acknowledged evidence that partially supported the opinion before explaining why he ultimately was not persuaded by her more limiting opinion.

In sum, the ALJ's decision reflects proper evaluation and consideration of the evidence and testimony available, and Plaintiff has not pointed to any reversible error. The ALJ need only minimally articulate his reasoning, and he has done so here. While the ALJ's decision is not perfect, there is nothing patently wrong with the decision's subjective symptom assessment. *See, e.g.*, *Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) ("This Court will uphold an ALJ's credibility determination unless that determination is patently wrong.").

**IV. Conclusion**

For all these reasons, Plaintiff's request for remand is denied, and the decision of the Commissioner is affirmed. [Filing No. 16.]

Date: 10/5/2026

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email